IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

MARK STEPHENS,

      Plaintiff,

     v.                                     Case No. 21cv241

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, S.I.,

      Defendant.

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

On July 1, 2019, American Family Mutual Insurance Company, S.I. ("American Family") terminated Mark Stephens' employment because he downloaded 929 confidential and proprietary American Family documents onto an external hard drive (the "Drive"), in violation of American Family's policies and his Employment Agreement. When he failed to respond to American Family's demands to certify destruction of the documents and/or to return the Drive, American Family filed a lawsuit against him in state court seeking return of the Drive (the "Lawsuit").

American Family recovered the Drive after bringing a motion for emergency preliminary relief, and then continued to pursue the Lawsuit to recover its attorneys' fees and costs, as guaranteed by his Employment Agreement. Counsel for both sides attempted to negotiate a settlement, and ultimately, American Family believed that

outside counsel for the parties had indeed reached a resolution. Thereafter, Stephens disputed that a resolution was reached. American Family proceeded with the Lawsuit in order to either recover its attorneys' fees and costs or enforce what it believed was legal, binding settlement agreement. After some discovery, the parties ultimately stipulated to the dismissal of the Lawsuit.

Completely disregarding his improper conduct in violation of American Family's policies and his Employment Agreement, Stephens filed a lawsuit against American Family alleging four claims. As set forth below, the Court should grant summary judgment on all claims, as follows:

- As to Claim I, a hostile work environment on the basis of race or because he raised complaints about discrimination (Dkt. 2-1, ¶¶ 92-93), Stephens fails to establish he was subjected to harassment that was severe or pervasive enough to alter the terms and conditions of his employment. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009); *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011).

- As to Claim II, that American Family fired him in retaliation for making complaints (Dkt. 2-1, ¶ 94), the undisputed evidence shows that Stephens downloaded confidential information in violation of American Family policy and was terminated five days later. Three other employees (who are white and did not make any complaints about discrimination) violated the same policy and were also terminated. He fails to establish retaliation. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).

- As to Claim III, that American Family further retaliated against him by filing the Lawsuit (Dkt. 2-1, ¶¶ 95-96), Stephens engaged in unprotected activity (misappropriation) and when he failed to comply with his contractual obligation to return the material, American Family was compelled to take legal action which was expressly contemplated by his Employment Agreement. *Mlynczak v. Bodman*, 442 F.3d 1050, 1061 (7th Cir. 2006); *Johnson*, 892 F.3d at 894.

- As to Claim IV, that American Family abused process[1] by filing and prosecuting the Lawsuit (Dkt. 2-1, ¶ 98), the undisputed facts show that American Family was compelled to file the Lawsuit by Stephens' refusal to return the Drive and/or certify the destruction of the confidential documents.  It then proceeded with the Lawsuit to recover its attorneys' fees and costs or to enforce what it believed was a legal, binding settlement agreement. *Tower Special Facilities, Inc. v. Inv. Club, Inc.,* 104 Wis. 2d 221, 229, 311 N.W.2d 225 (Ct. App. 1981); *Wis. Pub. Serv. Corp. v. Andrews,* 2009 WI App 30, ¶ 19, 316 Wis. 2d 734, 766 N.W.2d 232.

- Finally, without regard to the liability on his Section 1981 claims, American Family should also be granted summary judgment as to Stephens' claim for punitive damages, because American Family engaged in good faith efforts to implement and enforce an anti-discrimination policy. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535, 543 (1999).

Accordingly, American Family respectfully requests that the Court grant summary judgment on all claims and dismiss the Complaint with prejudice.

## STATEMENT OF FACTS

A full statement of the material, undisputed facts is set forth in Defendant's Proposed Findings of Fact ("DPFOF"), which accompanies this Brief.

## SUMMARY JUDGMENT STANDARD

Summary judgment is not a "disfavored procedural shortcut," but is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(quotation omitted). Summary judgment gives courts a mechanism to weed out "weak factual claims." *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476 (7th Cir. 1988). Summary judgment is the moment in a case when a party must show what

---

[1] The Court previously dismissed Stephens' malicious prosecution claim, contained in the Complaint at ¶ 97. (Dkt. 14.)

evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Neither speculative theories nor improbable plots creates a genuine issue of material fact. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1184 (7th Cir. 1993) ("[F]anciful speculations would not defeat a motion for directed verdict and therefore cannot stave off a motion for summary judgment either.").

Summary judgment is not rare or disfavored in civil rights cases. As stated in *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989):

> The workload crisis of the federal courts, and realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, have led the courts to take a critical look at efforts to withstand defendants' motions for summary judgment. A district judge faced with such a motion must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed.

<b>ARGUMENT</b>

**I.     THE COURT SHOULD GRANT SUMMARY JUDGMENT TO AMERICAN FAMILY ON STEPHENS' HOSTILE ENVIRONMENT CLAIM.**

For the time period prior to his termination, Stephens alleges that he and other Black employees were subjected to a hostile work environment because of race. (See Dkt. 2-1, ¶¶ 3, 17-22, and 92.)  Stephens' claims cannot pass muster under Section 1981 or Title VII.

To survive summary judgment on a hostile environment claim under either Section 1981 or Title VII[2], a plaintiff must show that (1) he was subject to unwelcome harassment; (2) the harassment was based on race or protected behaviors; (3) the harassment was severe or pervasive enough to create a hostile or abusive situation; and (4) there is a basis for employer liability. *See Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004). Stephens cannot satisfy either the second or third elements of a hostile environment claim based upon the pre-termination events.

**A.     Any Harassment Was Not Severe Or Pervasive Enough To Alter The Conditions Of Stephens' Employment.**

In order to be actionable, allegedly harassing conduct must be "sufficiently severe or pervasive to alter the conditions of employment." *Scruggs*, 587 F.3d at 840. Whether conduct meets this bar depends on "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or

---

[2] "The legal analysis for discrimination claims under Title VII and § 1981 is identical, so we merge our discussion of the two claims."  *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) (citing *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013)).

humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Id.*; *see also Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017). The Seventh Circuit expects employees to have a certain level of "thick skin," such that offhand comments and isolated incidents do not rise to the level of conduct that alters the terms and conditions of employment. *Johnson,* 892 F.3d at 900 (quoting *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012)). "Discrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees. Instead, the law forbids an employer from creating an actionably hostile work environment for members of protected classes." *Russell v. Bd. of Trs. of Univ. of Ill.*, 243 F.3d 336, 343 (7th Cir. 2001).

Subjective beliefs of plaintiffs about mistreatment, without more, do not support a hostile work environment claim. *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996). If the converse were true, the subjective beliefs of plaintiffs, on their own, would create genuine issues of material fact and in turn, would defeat virtually all defense motions for summary judgment. *Id.* Instead, plaintiffs must support their subjective beliefs with allegations of how that treatment affected their work performance in a quantifiable or quantitative way. *See Cambridge*, 325 F.3d at 901; *see also, Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (affirming a grant of summary judgment for defendant in part because plaintiff offered no proof that she could not do her job because of how her supervisors and co-workers treated her).

Here, Stephens claims he heard a single comment about race, was excluded from promotional opportunities, and was subject to frivolous investigations by Employee

Relations. These actions, even if they occurred (which American Family disputes), were not severe or pervasive enough to alter the conditions of his employment because they did not interfere with his work performance.[3] Indeed, Stephens has conceded that he excelled at his job, received excellent performance reviews, and earned top bonuses. (DPFOF 9.)

1.      Stephens' allegation that Hamilton made one comment about race does not show a hostile environment.

Stephens points to only one comment to support his hostile work environment claim: that around March 2018, Ann Hamilton "told me I only had my job because I was black and that my supervisor at the time, Telisa Yancy, only had her job because she was black, and we were friends." (DPFOF 10.) American Family disputes this assertion (DPFOF 10, fn. 1), but even if taken as true (though it is not), it is not sufficient to show a hostile environment. Stephens concedes there were no other race-related comments, jokes, or slurs by Hamilton or anyone else. (DPFOF 11.) Multiple cases have confirmed that a lone comment over the approximately 18-month period when Hamilton supervised Stephens could not be severe and pervasive enough to alter the terms and conditions of his employment as a matter of law. *See, e.g., Baskerville v. Culligan Int'l Co.,*

---

[3] To the extent that Stephens argues that the pre-termination events addressed in this Section I should be interpreted as asserting a discrimination or retaliation claim, those claims would fail for the same reasons as his harassment claim. This is because he did not suffer an actionable "adverse action", such as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007) (quoting *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000)).

50 F.3d 428, 431 (7th Cir. 1995) ("[a] handful of comments spread over months" is insufficient to demonstrate "severe or pervasive" harassment as a matter of law); *Passananti*, 689 F.3d at 667 ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment"); *McKenzie v. Milwaukee Cty.*, 381 F.3d 619, 624 (7th Cir. 2004) ("Title VII is not a general code of workplace civility, nor does it mandate admirable behavior from employers"); *Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir. 2002) (eight comments over the course of employment not enough).

      2.     Stephens' unsupported, speculative allegations that that he and other Black employees were regularly excluded from promotional opportunities and other advancement do not show a hostile environment.

Unable to point to any other racial comments, Stephens attempts to claim a hostile environment based upon other generalized, speculative claims about how American Family treated him and other Black employees. For example, he claims that "Black employees are regularly excluded from promotional opportunities" and that after complaining about Hamilton, his "calendar was cleared of important interactions…stunting the acceleration of his career." (Dkt. 2-1, ¶¶ 20 and 36.) These claims do not support an inference of a hostile environment or discrimination.

Stephens' testimony, in fact, contradicts any claim that was excluded from promotional or developmental opportunities. He admits he never applied for any promotions. (DPFOF 12.) He also admits that he was assigned to at least two very important projects in 2019—the American Family Field naming project and a social

justice initiative—that involved important interactions. (DPFOF 14.) And in 2019, Stephens was invited into the Leadership Edge Program, a program that grooms future leaders of American Family. (Dkt. 2-1, ¶ 26.)

Stephens next claims that Hamilton excluded him from important meetings, and that he did not attend "any meetings with senior leadership" after making complaints about Hamilton. (Dkt. 2-1, ¶¶ 19 and 34.) However, this assertion does not create a genuine dispute of fact because he undisputedly <u>did</u> attend such meetings and because the assertion is undeveloped and speculative. *See, e.g., Johnson,* 892 F.3d at 899 (noting that undeveloped arguments are waived and are insufficient to defeat summary judgment in all events).

At his deposition when asked, "Prior to Ann [Hamilton] becoming your leader, did you attend every single SLT meeting?" he responded, "No, of course not." (DPFOF 15.) Then, when confronted at his deposition with a list of such meetings he had attended when he reported to Hamilton, Stephens admitted that he attended at least one meeting and conceded that he could not remember—and therefore cannot refute—attending and presenting at the Leaders Forum (with all leaders in the enterprise in attendance) and at the Marketing Communications Immersion Share Out with select members of the Board of Directors, and attending several other meetings with the Chief Marketing Officer. (DPFOF 16-17.)

Further, Stephens has not presented and cannot present evidence of why Hamilton did not include him in other meetings, whether Hamilton invited employees in his stead who were white or had not made discrimination complaints against her,

and if so, why. Without these pieces, the allegation is nothing more than an "underdeveloped, generalized argument that [his] supervisors treated white employees better than black employees…[that] is not sufficiently supported by evidence so as to survive a summary judgment motion." *Johnson*, 892 F.3d at 899 (stating also that speculation as to an employer's/supervisor's state of mind is not sufficient to create an issue of material fact).

Finally, while he attempts to bolster his claim based upon American Family's alleged actions toward other Black employees, he can only point to hearsay and conjecture. He admits that for the other Black employees he identified, he does not have personal knowledge as to whether they applied for promotions, why they were denied promotions (if they, in fact, applied), who made such decisions, or the qualifications of the white employees who were (allegedly) awarded promotions. (DPFOF 13.) Without this such evidence, Stephens' hostile environment claim based on this allegation is doomed. *See e.g., Johnson,* 892 F. 3d at 898 ("a sprinkling of speculative statements that the white employees who received the positions seemed like they may have been less qualified than African-American candidates" is insufficient to defeat an employer's motion for summary judgment on failure to promote claims).

      3.    Stephens' unsupported, speculative allegations that he and other Black employees were subjected to frivolous investigations does not show a hostile environment.

Stephens alleges that American Family subjected him and other Black employees to frivolous investigations by Employee Relations. (Dkt. 2-1, ¶¶ 21-22.) For himself, he cites a 2016 investigation that Employee Relations conducted after other employees

reported that he was presenting and circulating information to his team which appeared to be other companies' (Kraft Foods and Motorola) confidential information. (DPFOF 18.) The Motorola information was clearly marked "Confidential Proprietary." (DPFOF 19.) Ultimately, American Family concluded that Stephens had not improperly used third party confidential information. (DPFOF 20.) He was not disciplined. (DPFOF 20.) The fact that American Family conducted an investigation of an employee's use of other companies' allegedly confidential information is unsurprising. Moreover, American Family concluded the investigation in Stephens' favor, which hardly raises an inference of discrimination.

Stephens also claims that one or two employees purportedly told him that Hamilton encouraged them to make unfounded complaints about him related to the May 2019 Employee Relations investigation. (Dkt. 2-1, ¶¶ 37-38; DPFOF 29.) This is hearsay, which cannot be relied upon to defeat summary judgment. *See, e.g., Johnson,* 892 F.3d at 896. Further, with regard to the many complaints team members made about him, he admitted "I am not saying that the complaints were not valid or not because I don't know. Many of them I dispute. But I offered multiple solutions, but at that point in time a lot of people were complaining. Yes. That's a fact. And I'm not disputing that." (DPFOF 34.)

In all events, these investigations are not evidence of harassment, discrimination, or retaliation, because to make it so, Stephens would need to show (but has not) that white employees had been accused of doing the same thing but had not been investigated. *See, e.g., Johnson,* 892 F.3d at 899 (a vague claim based on the

employee's subjective belief that supervisors "nit-picked black" but not white employees fails unless there is actual evidence that black employees were held to a different standard than white employees).

As to American Family's treatment of other Black employees, Stephens again makes vague generalizations that other Black employees were investigated by Employee Relations. However, he supports this claim with nothing more than hearsay – specifically, one Black employee told him she was being investigated, and he heard rumors in the workplace about another Black employee being investigated. (DPFOF 21.) He cannot avoid summary judgment by relying on such hearsay. *See, e.g., Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) (where the court refused to consider "vague, conclusory assertions about incidents outside her personal knowledge" in granting defendant's motion for summary judgment on plaintiff's discrimination claim.); *Palucki,* 879 F.2d at 1572 ("[A] party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture"); *Brown v. Commonwealth Edison Co.*, No. 95CV3501, 1998 U.S. Dist. LEXIS 3609 at *46–47 (N.D. Ill. Mar. 20, 1998) (where the court rejected claims about what was reported "through the office grapevine," and decided that a witness's opinions "as to matters outside his personal knowledge" were insufficient to defeat a motion for summary judgment).

**B.     Stephens Has Not Shown That The Harassment He Allegedly Faced Was Based Upon Race.**

Other than the one comment allegedly made by Hamilton, Stephens cannot show that any other alleged events had any link to race. Therefore, he cannot satisfy the second element of a hostile environment claim. *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011) ("the plaintiff must show that the harassment was based on membership in a protected class."); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) ("race neutral" events/comments do not establish discrimination or harassment on the basis of race).

In fact, when Stephens filed his complaint with Employee Relations about Hamilton around January 2019, he reported that her actions were "based upon race *and/or sexual orientation*." (DPFOF 22-23.) In other words, Stephens did not know if the alleged actions were because of his race or because of his sexual orientation. Without proof that the alleged events were "because of" his race, his racial harassment claims fails. *Id.*

Ultimately, the alleged incidents of harassment, even if they occurred, do not come close to rising to the level of severe or pervasive conduct and other than the single comment, no evidence exists that the incidents were tied to his race. As such, American Family should be granted summary judgment on his pre-termination harassment claim both under Title VII and Section 1981.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO AMERICAN FAMILY ON STEPHENS' RETALIATION CLAIM UNDER BOTH TITLE VII AND SECTION 1981.

In order to survive summary judgment, Stephens must adduce evidence that the decision-makers who terminated his employment acted with retaliatory intent based upon his claim of race discrimination. For both Title VII and Section 1981, at the summary judgment stage, proof of retaliatory or discriminatory intent is analyzed under either the "direct" or "indirect" methods of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Johnson,* 892 F.3d at 894. As explained below, Stephens cannot succeed using either method.

### A. Stephens Cannot Present Sufficient, Relevant Evidence Which Infers Retaliatory Intent By Carlson, Snapp, and Hamilton.

Under the direct method, a plaintiff must present sufficient, relevant evidence from which a reasonable trier of fact could infer discrimination or retaliation. *Johnson,* 892 F.3d at 894. Such evidence must "point directly" to a discriminatory or retaliatory reason for the employer's action and be directly related to the employment decision. *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012). Examples of relevant evidence include suspicious timing, ambiguous oral or written statements, or discrimination directed at other employees in the protected group. *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994); *Smith,* 806 F.3d at 904 (citing *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012)). However, temporal proximity or suspicious timing alone is rarely sufficient to overcome a motion for summary judgment. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015); *Tibbs v.*

14

*Admin. Office of Ill. Courts*, 860 F.3d 502, 505 (7th Cir. 2017) ("The problem is that suspicious timing alone is rarely enough by itself. A plaintiff must ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation.").

There is not sufficient evidence here to allow a jury to conclude that American Family's decision to terminate Stephens was because of his complaints about discrimination, without relying on conjecture. First, Stephens has not shown the required causal link between the termination and Stephens' prior complaints of discrimination.  *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008).

Second, there is no suspicious timing. The decision in *Amrhein* is instructive here. There, the plaintiff threatened to file an EEOC complaint and was fired approximately six weeks later, based upon the employer's assertion that she made an inappropriate disclosure of the employer's confidential information. *Id.* at 857. The Seventh Circuit affirmed summary judgment in favor of the employer, determining that suspicious timing alone was not sufficient to create an inference of retaliation in light of the employee's intervening policy violation. *Id.* at 858. *See also Kidwell v. Eisenhauer*, 679 F.3d 957, 966-67 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, [the Seventh Circuit] typically allow[s] no more than a few days to elapse between the protected activity and the adverse action…[W]here a significant intervening event separates an employee's protected activity from the adverse employment action he receives, a suspicious-timing argument will not prevail.").

Here, Stephens' termination was not proximate to his initial complaint of discrimination to Employee Relations in January 2019. He was not terminated until seven months later. (DPFOF 55.) Instead, Stephens' termination came on the heels— only 12 days after-- the serious performance warning (*i.e.*, the Written Reminder) that was issued to him on June 19, 2019. (DPFOF 37). That warning expressly stated, "Repeated issues of this nature <u>or any other substantiated performance problem</u> will result in further discipline up to, and including, termination of your employment." (DPFOF 35.) He violated the Code of Conduct and Information Technology Security Policy by downloading over 900 confidential American Family documents only seven days later. (DPFOF 4, 5, and 40.) This is exactly the type of "significant intervening event" contemplated by *Kidwell.*

Lastly, there is no admissible evidence to support an inference that Carlson, Snapp, Hamilton, or anyone else at American Family was unfairly disciplining, retaliating, or discriminating against other Black employees, and therefore, by extended inference, against Stephens. There is also no evidence that any other Black employees made complaints against Carlson, Snapp, or Hamilton, so there is no evidence that any Black employees have complained they were retaliated against for such (nonexistent) complaints. Indeed, the evidence is to the contrary - within one year of Stephens' termination, three other (white) employees were terminated for improperly downloading confidential business information to a personal device, under circumstances similar to Stephens' situation. (DPFOF 78-90.)

In summary, there is no evidence sufficient to directly raise an inference of discriminatory intent.  Therefore, Stephens must proceed under the indirect method. As explained below, he fails to carry his burden under that method, as well.

**B.      Stephens Cannot Prove His Retaliation Claim Via The Indirect Method.**

Under the familiar burden-shifting framework initially set forth in *McDonnell Douglas Corp.*, it is first Stephens' burden to establish a *prima facie* case of intentional retaliation or race discrimination. To do this, Stephens must provide evidence that: (1) he is a member of a protected class; (2) he was meeting American Family's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees outside of the protected class were treated more favorably. *Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 450 (7th Cir. 2014); *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017).

If Stephens makes this *prima facie* showing, the burden shifts to American Family to come forward with legitimate, nonretaliatory reasons for the challenged employment action. *Ferrill*, 860 F.3d at 500. Upon presentation of a legitimate reason for the challenged action, the burden then shifts back to Stephens to produce evidence sufficient to raise an inference that American Family's reason was a pretext for retaliation. *Id*.

1.      Stephens fails to present evidence of similarly situated employees who were treated better than him.

Stephens cannot meet his burden under the fourth *prima facie* element, which requires him to identify a similarly situated employee who had not complained about

discrimination or harassment (or for a race claim, was not Black) who was not

disciplined or terminated for downloading confidential information to an external hard

drive.

    To be similarly situated, a plaintiff must show that the comparator is

"comparable to the plaintiff in all material respects" and "without such differentiating or

mitigating circumstances as would distinguish [his] conduct or the employer's

treatment of [him]." *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir.

2006). *See also, Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). "All things being

equal, if an employer takes an action against one employee in a protected class but not

another outside that class, one can infer discrimination. The 'similarly situated' prong

establishes whether all things are in fact equal." *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1061

(7th Cir. 2008) (citation omitted). The purpose of this element "is to eliminate other

possible explanatory variables, 'such as differing roles, performance histories, or

decision-making personnel, which helps isolate the critical independent variable' —

discriminatory animus." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting

*Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

    Here, Stephens cannot identify any other employee who violated American

Family's confidential information policy but was not terminated. Without satisfying this

element, Stephens cannot proceed to trial. *See, e.g., Johnson*, 892 F.3d at 898 (holding that

"the lack of a relevant comparator…dooms" a plaintiff's disparate treatment claim). Not

only are there no comparators, the evidence shows that there were three other

employees who downloaded confidential American Family information onto devices in

violation of the Code and Security Policy, could not provide a legitimate business reason for doing so, and were all terminated promptly. (DPFOF 78-90.)

> 2. There is no evidence that American Family's legitimate, non-retaliatory reasons for terminating Stephens were a pretext for retaliation.

Even if Stephens was able to satisfy the elements of his *prima facie* case (which he cannot do), he is unable to demonstrate that American Family's stated reason for terminating him, *i.e.*, that he downloaded over 900 confidential American Family documents in violation of the Code and Security Policy, was a pretext for retaliation. "Pretext" is more than a mere mistake; it "means a lie"—a "phony reason" for the employment action. *Smith,* 806 F.3d at 905. "In order to show pretext, [the Plaintiff] must demonstrate that [the defendant's] proffered reason is a lie or completely lacks a factual basis." *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000); *see also Olsen v. Marshall & Ilsley Corp.,*267 F.3d 597, 602 (7th Cir. 2001) ("Our only concern at the pretext stage is whether this defendant honestly remained dissatisfied with its employee's performance."); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.").

Stephens cannot show that American Family's grounds for terminating him were factually baseless. He admits that he downloaded the information. (DPFOF 42.) American Family's Code and Security Policy specifically prohibited this, with the policy stating that regardless of ownership of the device, "Users are prohibited from backing-up Enterprise information to personal storage, e.g. Cloud storage, external hard drives,

USB (thumb) drives, or personal computers." (DPFOF 5-6.) Reviewing similar factual circumstances, the Seventh Circuit in *Amrheim*, 546 F.3d at 860, concluded that mishandling of a company's confidential and proprietary information was a legitimate, non-discriminatory reason for termination, even when the termination was done in the face of pending discrimination claims. As here, in *Amrheim* "there is ample evidence in the record that these events occurred, and they qualify as legitimate, nondiscriminatory reasons to discharge Amrhein. Amrhein fails to discredit these reasons as pretext." *Id.*

Stephens adduces no evidence that Carlson, Snapp, or Hamilton fabricated the underlying reason for his termination. Stephens may argue his suspicion that his downloading of the confidential files was not the "real" reason for his termination, but "speculation as to an employer's state of mind is not sufficient to create an issue of material fact." *Johnson*, 892 F.3d at 899.

Stephens may also argue that the decision was unfair or unduly harsh. That argument misses the point: whether or not an employer's decision is foolish, mistaken, unduly harsh, unfair, or wrong is of no concern to the court analyzing a discrimination claim. *Millbrook,* 280 F.3d at 1175. As repeatedly explained by the Seventh Circuit, "courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi v. Aramark Business Servs.*, 336 F.3d 520, 532 (7th Cir. 2003). Further, the Code and the Security Policy expressed that termination was a potential consequence of violation. (DPFOF 6 and 92.)

Finally, the fact that three other employees were treated consistently with Stephens for engaging in the same actions also shows there is no pretext (*see Ihenacho v.*

*Ashcroft*, IP 99-256-C, 2001 U.S. Dist. LEXIS 4901 at *24 (S.D. Ind. Apr. 17, 2001)) and

therefore, summary judgment is warranted as to Stephens' Title VII and Section 1981

retaliation claim.

**III.  THE COURT SHOULD GRANT SUMMARY JUDGMENT TO AMERICAN FAMILY ON STEPHENS' CLAIM THAT AMERICAN FAMILY RETALIATED AGAINST HIM BY FILING THE LAWSUIT.**

Stephens' claim that American Family retaliated against him by filing the

Lawsuit is fatally flawed. As an initial matter, lawsuits for matters unrelated to

protected activity do not constitute unlawful retaliation under Title VII/Section 1981

unless the suit is independently an abuse of process. *Mlynczak v. Bodman*, 442 F.3d 1050,

1061 (7th Cir. 2006) (finding that a manager's defamation lawsuit against an employee

was not the type of adverse action prohibited by 42 U.S.C. § 2000e-3(a)); *see also Hasan v.*

*Foley & Lardner, LLP*, No. 04 C 5690, 2007 U.S. Dist. LEXIS 54930, AT *28-29 (N.D. Ill.

July 26, 2007), *rev'd on other grounds*, 552 F.3d 520 (7th Cir. 2008), as corrected (Jan. 21,

2009). In *Hasan*, a former employee of Foley & Lardner filed a discrimination claim after

he was terminated. He later added a retaliation claim after Foley threatened him with a

lawsuit arising out of his taking and retaining Foley's confidential information. The

district court granted summary judgment to Foley on the retaliation claim, concluding

that filing a lawsuit, much less threatening one, did not amount to an abused of process

under these facts. *Id.* at *29; *see also infra*, Section IV (abuse of process claims are

disfavored).

Subject to these principles, Stephens must utilize the direct or indirect method to prove that American Family retaliated against him by filing the Lawsuit. *Johnson,* 892 F.3d at 894. He cannot succeed under either method.

There is no evidence directly linking his former complaints of discrimination to American Family's decision to file the Lawsuit. There is no suspicious timing or any other evidence that raises an inference of retaliation. *See supra*, Section IIA. Rather, the only reasonable inference is that American Family was compelled to file the Lawsuit because:

- In the termination letter which it provided to him on July 1, 2019, American Family asked that by July 2nd, he certify that he had destroyed and not disseminated the confidential information. At the time the letter was prepared, American Family did not realize that Stephens would later assert that the Drive belonged to American Family. (DPFOF 56-57.)

- Stephens did not provide the certification by the deadline. (DPFOF 59.)

- By email dated July 5th, American Family demanded that he return the Drive and certify that he had not retained or disseminated any of the confidential information, by July 8, 2019. The email warned that if he did not comply with the deadline, "American Family will pursue its legal options to recover and prevent dissemination of its property and information." (DPFOF 64.)

- On July 5th, Stephens replied that he would respond "in another week or so." (DPFOF 65.)

- Stephens did not provide the Drive until after American Family filed the Lawsuit and sought the state court's assistance in compelling Stephens to return the Drive. (DPFOF 70.)

Likewise, Stephens cannot prevail under the indirect method. He has not identified and cannot identify any similarly-situated employees—*i.e.,* employees who

were terminated by American Family, had American Family's confidential information in their possession after termination, and refused to return the information to American Family as directed—much less any such employees who were treated more favorably than him. Under indirect method, it is Stephens' burden to satisfy this element. As there are no comparators, Stephens cannot prove his claim.

## IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO AMERICAN FAMILY ON STEPHENS' CLAIM THAT AMERICAN FAMILY ABUSED PROCESS.

American Family should be granted summary judgment on Stephens' abuse of process claim because he retained and refused to return the Drive containing American Family's confidential information by the deadline provided, and the Employment Agreement expressly provided for the remedies that American Family was seeking at all points of the process. Therefore, he cannot prove that American Family used the process for a purpose other than it was designed for a collateral advantage.

To establish abuse of process, Stephens must prove the following two elements: (i) the defendant had a purpose other than that which the process was designed to accomplish; and (ii) defendant subsequently misused the process to accomplish a purpose other than that it was designed to accomplish. Wis. JI-Civil 2620. The tort of abuse of process is "disfavored" due to "its potential chilling effect on the right of access to the courts." *Schmit v. Klumpyan,* 2003 WI App 107, ¶ 13, 264 Wis. 2d 414, 663 N.W.2d 331 (reversing trial court and finding no abuse of process). As such, courts "narrowly construe[]" claims of abuse of process "to insure the individual a fair opportunity to present his or her claim." *Id.* A plaintiff cannot establish abuse of process by merely

23

claiming that the defendant maliciously brought a lawsuit to harm the plaintiff. *See Tower,* 104 Wis. 2d at 229. Rather, the improper purpose must also culminate in an actual misuse of the process to obtain some collateral or ulterior advantage. *Id.*

Stephens cannot establish facts to support either of these elements and therefore his abuse of process claim should be dismissed.

**A.      Stephens Cannot Refute that American Family Filed and Continued to Prosecute the State Court Action to Seek the Remedies Afforded by the Employment Agreement.**

The first element (improper purpose) requires Stephens to prove "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process …" to obtain some ulterior advantage. *Tower,* 104 Wis. 2d at 229 (quoting *Thompson v. Beecham,* 72 Wis. 2d 356, 362-63, 241 N.W.2d 163 (1976); *see also Andrews,* 2009 WI App 30, ¶ 19 (affirming dismissal of abuse of process claim). This "ulterior advantage" is sometimes referred to as a "collateral advantage, not properly involved in the proceeding itself," *id.* at 362-63, or of use of the process "to effect an object not within the scope of the process," or of any other improper purpose. *Brownsell v. Klawitter,* 102 Wis. 2d 108, 113, 306 N.W.2d 41 (1981) (emphasis omitted); *see Schmit,* 264 Wis.2d 414, ¶ 26 (dismissing abuse of process claim because certain relief was "in play" and "establishe[d] that Schmit was seeking a remedy the process was intended to secure and not a collateral advantage or an unlawful result").

Stephens' Employment Agreement contained the following provisions:

1.b.i. ***Promise to Protect***. Employee promises to protect and maintain the confidentiality of Confidential Information while employed by Company. Employee will follow all Company policies and procedures

for the protection and security of information, including, without limitation policies and procedures limiting the internal use or disclosure of Confidential Information…

ii.      *Promise to Return*. Employee agrees to return (and not retain) any and all materials reflecting Confidential Information that he or she may possess (including all company-owned equipment) immediately upon termination of employment or upon demand by Company.

8. **EQUITABLE RELIEF**. Employee agrees that damages would be an inadequate remedy for Company in the event of breach or threatened breach of Employee's obligations under this Agreement and thus, in any such event, Company may, either with or without pursuing any potential damage remedies, immediately obtain and enforce an injunction prohibiting Employee from violating this Agreement. Employee understands that this provision regarding the issuance of an injunction does not limit any remedies at law or equity otherwise available to Company.

9. **ATTORNEY FEES**. In the event that Employee breaches any provision of this Agreement, Employee shall pay Company all court costs, reasonable attorneys' fees, and expenses incurred by Company to successfully enforce this Agreement.

(DPFOF 4.) After recovering the Drive, American Family believed the parties reached an agreement to amicably resolve any disputes between them around August 13, 2019, based upon an email sent by Attorney Rice to American Family's outside counsel. (DPFOF 73.) After Stephens later claimed that there was no settlement between the parties, American Family proceeded with the Lawsuit in order to recover its attorneys' fees and costs or to enforce what it believed was legal, binding settlement agreement. (DPFOF 75-76.) These undisputed facts establish American Family's proper purposes for the Lawsuit.

This conclusion is supported by *Andrews*. There, the Wisconsin Public Service Commission (WPSC) and Andrews disputed whether a 1972 easement gave WPSC the

right to construct a new power line. 316 Wis. 2d 734, ¶ 5. WPSC filed suit and requested a declaratory judgment. *Id.* ¶ 6. Andrews counterclaimed for abuse of process, arguing that WPSC used the declaratory judgment action "to end Andrews' resistance to the new power line, exhaust her financial resources, and deter other easement owners from seeking compensation through condemnation." *Id.* ¶¶ 7, 20. The court dismissed Andrews' claim, in part because "Andrews points to no improper actions by WPSC in prosecuting the declaratory judgment action." *Id.* ¶ 21. The court explained that a "legitimate dispute existed about WPSC's rights under the 1972 easement, and a declaratory judgment action was a proper means of resolving that dispute." *Id.*

Likewise, once Stephens compelled American Family to file the Lawsuit and to seek the state court's assistance in obtaining the return of the Drive, American Family was entitled to recover its attorneys' fees and costs, and continuing with the Lawsuit was the proper means to recover those fees and costs.

Apposite cases in other jurisdictions have likewise rejected abuse of process claims under similar circumstances. *See, e.g., Comfax Corp. v. North American Van Lines Corp.,* 638 N.E.2d 476 (Ind. Ct. App. 1994) (dismissing an abuse of process claim where the company used the lawsuit to recover its confidential materials); *Hertz v. Luzenac Grp.,* 576 F.3d 1103 (10th Cir. 2009) (rejecting abuse of process claim under Colorado law where the company used counter claims to address the misappropriation of its trade secrets).

In light of the undisputed provisions in the Employment Agreement, Stephens' allegation that American Family had "ulterior motives" for filing the state court action,

including to intimidate and dissuade Stephens from seeking redress for his alleged
employment discrimination claims, to secure waiver and release of Stephens' alleged
employment discrimination claims, and to justify Stephens' termination, are not enough
to survive summary judgment. His allegations are conclusory and speculative, and
therefore are not sufficient to create an issue of material fact. *See, e.g., Johnson*, 892 F.3d
at 899 (speculation as to an employer's state of mind is not sufficient to defeat summary
judgment); *Kustelski v. Taylor,* 2003 WI App 194, ¶ 30, 266 Wis. 2d 940, 958, 669 N.W.2d
780 (affirming grant of summary judgment on abuse of process claim because at most
plaintiff offered various allegations that could lead to speculation but plaintiff failed to
submit any evidence to establish anything improper); *Harrington v. New England Mut.
Life Ins. Co.,* 873 F.2d 166, 169 (7th Cir. 1989) ("[O]ne cannot avoid summary judgment
on speculation and conjecture").

For these reasons alone, the Court should dismiss Stephens' abuse of process
claim.

**B.     Stephens Cannot Prove that American Family Actually Misused the
Process to Obtain a Collateral Advantage.**

Moreover, Stephens' abuse of process claim also fails because he cannot prove
that American Family actually misused the state court action to obtain the alleged
ulterior motive. The normal prosecution of a civil lawsuit, whatever the motivation, is
not an abuse of process. *Thompson,* 72 Wis. 2d at 363-64 ("[T]here is no liability where
the defendant has done nothing more than carry out the process to its authorized
conclusion, even though with bad intentions.").

Here, there is no allegation whatsoever that American Family somehow misused or perverted the Lawsuit. American Family did nothing more than prosecute the Lawsuit using normal means. Therefore, the Court should also dismiss the abuse of process claim because Stephens fails to prove the second required element.

## V.   THE COURT SHOULD REJECT STEPHENS' CLAIM FOR PUNITIVE DAMAGES.

Stephens' claim for punitive damages should be dismissed, even if his Title VII/Section 1981 claims survive summary judgment because American Family engaged in good faith efforts to establish and enforce an antidiscrimination policy in compliance with the law.

A plaintiff may recover punitive damages under Section 1981 claims if they establish that the employer "acted with knowledge that its actions may have violated federal law" and that "the employees who discriminated against him are managerial agents acting within the scope of their employment." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857-58 (7th Cir. 2001) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535, 543 (1999)). However, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Kolstad*, 527 U.S. at 545. Therefore, even if the two prongs are met, the employer may avoid liability for punitive damages if it can show that it engaged in good faith efforts to establish and enforce an antidiscrimination policy in compliance with Title VII (the "Good Faith Defense").

28

*Kolstad*, 527 U.S. at 544; *Bruso*, 239 F.3d at 858.  This defense is set forth in the Seventh

Circuit's standard jury instruction 3.13, which states, in pertinent part:

> 3.13 PUNITIVE DAMAGES
>
> If you find for Plaintiff, you may, but are not required to, assess punitive damages against Defendant. The purposes of punitive damages are to punish a defendant for his conduct and to serve as an example or warning to Defendant and others not to engage in similar conduct in the future.
>
> Plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against Defendant. You may assess punitive damages only if you find that the conduct of Defendant's managerial employees was in reckless disregard of Plaintiff's rights. An action is in reckless disregard of Plaintiff's rights if taken with knowledge that it may violate the law.
>
> Plaintiff must prove by a preponderance of the evidence that Defendant's managerial employees acted within the scope of their employment and in reckless disregard of Plaintiff's right not to be discriminated against…. You should not, however, award Plaintiff punitive damages if Defendant proves that it made a good faith effort to implement an antidiscrimination policy.

*Federal Civil Jury Instructions of the 7th Cir.* 3.13 (2017 rev.).

District courts can dismiss punitive damages claims on summary judgment. *See Pichler v. UNITE*, 542 F.3d 380, 387 (3d Cir. 2008) ("If, on remand, the District Court determines that summary judgment is appropriate as to plaintiffs' punitive damages claim, then a trial will be unnecessary"); *Cochetti v. Desmond*, 572 F.2d 102, 103 (3d Cir. 1978) ("to the claim for punitive damages, we conclude that on the record before the district court summary judgment was proper"). In *Ridley v. Costco Wholesale Corp.*, 217 Fed. Appx. 130, 138 (3rd Cir. 2007), the Third Circuit affirmed the district court's order granting summary judgment for Costco on Ridley's claim for punitive damages. The

evidence showed that "Costco maintained policies against discrimination and harassment and an Open Door policy for reporting complaints of discrimination or harassment," "trained new supervisors with respect to Costco's harassment complaint policy," and "provided supervisors with detailed materials regarding the supervisor's obligation to address discrimination issues." *Id.*

In this case, it is undisputed that American Family's Code of Conduct contains an anti-discrimination and harassment policy, expressly prohibiting racial discrimination or harassment. (DPFOF 91.) Violations of the Code "may result in disciplinary action up to and including termination." (DPFOF 92.) The Code states that employees are expected to "Promptly report any improper discriminatory behavior, sexual harassment, illegal activities, or other violations of this Code, laws, or regulations." (DPFOF 93.) As referenced in the Code, American Family offers the EthicsLine as one of the means to report violations of the Code:

> The Ethicsline is a simple way to report any incidents, and is also a source for seeking guidance on incidents. It's a resource to help keep our workplace a safe, secure and ethical environment. When you report, you may be anonymous.

(DPFOF 94.)

In furtherance of its good faith efforts to enforce the Code, American Family also mandates that all employees complete regular training on preventing workplace harassment and on "Culture of Inclusion: Supporting a Diverse Workforce." (DPFOF 95.)

These facts are not in dispute. For these reasons, American Family should be granted summary judgment on Stephens' claim for punitive damages under Section 1981.

## CONCLUSION

For the reasons presented herein, American Family respectfully requests that summary judgment be granted on its behalf, on the entirety of Stephens' Complaint. Should Stephens' Title VII/Section 1981 claims survive summary judgment, his punitive damage claim should be dismissed in any event.

Dated this 4th day of February, 2022.

MICHAEL BEST & FRIEDRICH LLP
Attorneys for Defendant


By:___/s/Amy O. Bruchs_____
    Amy O. Bruchs
    Tanya M. Salman

MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI  53701-1806
Phone:  608.257.3501
Fax:  608.283.2275
aobruchs@michaelbest.com
tmsalman@michaelbest.com