UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

MARK STEPHENS,

           Plaintiff,

    v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, S.I.,

           Defendant.

Case No. 3:21-cv-00241-jdp

---

**BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
BY PLAINTIFF MARK STEPHENS**

---

NOW COMES Plaintiff Mark Stephens ("Mr. Stephens"), by his attorneys, THE SULTON LAW FIRM LLC, by Attorney William F. Sulton, and submits this brief in opposition to Defendant American Family Mutual Insurance Company, S.I.'s ("American Family") motion for summary judgment.  (Dkt. 20.)

### A. Introduction

Mr. Stephens was hired as the Director of Consumer Research and Analytics at American Family in August 2015.  (Dkt. 44-2 (PPFOF) at ¶1.)  Later that year, his title was changed to Director of Consumer Insights and Analytics.  (*Id.*, at ¶2.)  Mr. Stephens excelled at his job.  His job performance was twice rated as "outstanding" in 2016.  (*Id.*, at ¶¶3-4.)  Mr. Stephens' job performance was rated as "outstanding" and "exceptional" in 2017.  (*Id.*, at ¶¶6-7.)  He was a "9-Box"

employee: meaning that he was among the most exceptional employee at American Family and was ready for promotion. (*Id.*, at ¶¶5, 8.) Mr. Stephens was also admitted and enrolled in American Family's coveted Leadership Edge Program—which is designed to elevate employees to senior leadership. (*Id.*, at ¶9.)

Mr. Stephens' rise came to abrupt halt when Ann Hamilton ("Ms. Hamilton") became his manager in January 2018. (*Id.*, at ¶10.) She told Mr. Stephens that he only had his job because he is Black. (*Id.*, at ¶11.) Ms. Hamilton also said that her boss, Telisa Yancy ("Ms. Yancy"), only had her job because she is Black. (*Id.*, at ¶12.) Ms. Hamilton excluded Mr. Stephens from Senior Leadership Team meetings, which were essential to his upward mobility at American Family. (*Id.*, at ¶13.) She replaced Mr. Stephens with white colleagues on almost all company-wide peer internal steering committees. (*Id.*, at ¶14.) Ms. Hamilton humiliated Mr. Stephens by placing his direct reports on committees instead of him. (*Id.*, at ¶15.) She downgraded Mr. Stephens' job performance ratings to "as expected" in 2018. (*Id.*, at ¶¶24-25.)

Mr. Stephens complained to Employee Relations about Ms. Hamilton's misconduct. (*Id.*, at ¶¶26, 28.) Ms. Hamilton responded to Mr. Stephens' complaints by telling him that "there would be consequences." (*Id.*, ¶30.) There were. Mr. Stephens remained outside of Senior Leadership Team meetings. (*Id.*, at ¶31.) Ms. Hamilton subjected him to microaggressions and biased scrutiny. (*Id.*, at ¶32.) Mr. Stephens was fired because Ms. Hamilton told Employee

Relations that Mr. Stephens downloaded files "with an intent to retain and potentially use or disclose the information." (*Id.*, ¶39.) American Family also filed a lawsuit against Mr. Stephens because of Ms. Hamilton's false, and retaliatory, statements. (*Id.*, at ¶58.)

### B. Summary Judgment Standard

Summary judgment is a drastic remedy and is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Even following the *Celotex* Trilogy, the Seventh Circuit maintains the view that a heightened level of scrutiny should be applied on a motion for summary judgment in an employment discrimination case because issues of intent and credibility are generally involved. *See, e.g., Webb v. Clyde L. Choate Mental Health and Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir. 2000); *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998); *EEOC v. RJB Props., Inc.*, 857 F. Supp. 2d 727, 739 (N.D. Ill. 2012). Plaintiffs are not required to prove cases at summary judgment, instead, they must come forward with some facts that could

arguably entitle them to judgment.  In addition, the burden of proof in such cases is often described as *de minimis*.  *Belour v. Adapt of Ill., Inc.*, 460 F.Supp.2d 867, 873 (N.D. Ill. 2006).

### C. Argument

**1. The Court should deny summary judgment to American Family on Mr. Stephens' retaliation claims under Title VII and Section 1981.**

42 U.S.C. § 2000e-3(a) ("Title VII") forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII. Similarly, the U.S. Supreme Court has determined that 42 U.S.C. § 1981 ("Section 1981") includes retaliation claims.  *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008).  Courts apply the same elements to retaliation claims under Title VII and Section 1981.  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  To prevail in a retaliation claim, Mr. Stephens must prove that (1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) he is a causal link between the protected activity and the adverse action. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

Mr. Stephens engaged in protected activity protected by Title VII when he complained about Ms. Hamilton's race discrimination to Employee Relations and to Ms. Hamilton.  *Castro v. DeVry Univ., Inc.*, 786 F.3d 559 (7th Cir. 2015) (complaints to human resources personnel are protected activity even when the underlying events do not rise to the level of an adverse action).  Mr. Stephens suffered an adverse employment action when he was fired.  *Burnett v. LFW Inc.*,

472 F.3d 471, 482 (7th Cir. 2006) (termination is "unquestionably a materially adverse action."). The dispute in this case is about whether Mr. Stephens can establish a casual connection between his complaints and the firing.

In *Ortiz v. Werner Enters., Inc.*, the Seventh Circuit removed the "direct" versus "indirect" evidence distinction from the analysis of employment discrimination. 834 F.3d 760 (7th Cir. 2016). "[D]istrict courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Id.*, at 765. The legal standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* Put another way, "[a]ll that is required is evidence from which a rational trier of fact could reasonably infer" that American Family retaliated against Mr. Stephens for engaging in protected activity. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

Ms. Hamilton used the investigation into Mr. Stephens' computer use to build a case against him instead of a neutral effort to discovery the truth. *See Vega v. Chicago Park Dist.*, 954 F.3d 996, 1005 (7th Cir. 2020); *see also Lerman v. Turner*, 2013 U.S. Dist. LEXIS 118479, *41-43 (N.D. Ill. 2013) (Evidence that outcome of investigation was predetermined before relevant interviews were conducted, along with Defendants' "seemingly conscious decision to limit the individuals involved in the investigation" was evidence to support a finding that proffered reason for plaintiff's termination was pretextual). Ms. Hamilton

reviewed a list of filenames, not the actual files.  (Dkt. 44-2 at ¶37.)  She told Employee Relations that she "suspected Mr. Stephens had downloaded the files with an intent to retain and potentially use or disclose the information."  (*Id.*, at ¶39.)  Ms. Hamilton was unable to explain her feigned suspicion, testifying that "[t]here's too diverse of files in here to try to figure out what the current work that he was working on, to try to pull together a theme[.]"  (*Id.*, at ¶40.)

American Family argues that K.R., K.S., and S.R. were terminated for similar conduct.  That is untrue.  Those three employees had personal storage devices.  (Dkt. 21 at ¶78.)  Mr. Stephens downloaded files to a drive American Family had given him for that purpose.  (*Id.*, at ¶¶46-47.)  There are other significant differences.   K.R. provided notice that she had another job and downloaded the files to use at her new employer.  (Dkt. 44-2 at ¶70.)  K.S. downloaded files "to use for himself."  (*Id.*, at ¶71.)  S.R. downloaded files going back to 2013 after he was told his job was in jeopardy.  (*Id.*, at ¶73.)  In discussing S.R.'s computer use, Ms. Carlson explained that "we've had people at various level in the organization download a similar number of documents" and "in the past" American Family has simply requested "return of the materials, certification and strong coaching[.]"   (*Id.*, at ¶48.)   Thus, S.R.'s termination shows that Ms. Hamilton has used computer use as a pretext for a prior termination decision.

*Amrhein v. Health Care Serv.*, is distinguishable.  546 F.3d 854 (7th Cir. 2008).  In *Amrhein*, the employer's reason for termination was the "multiple" disclosures of proprietary information.  *Id*, at 860.  Mr. Stephens, by contrast, did

not disclose any proprietary information to a third person.  Furthermore, the purpose of an external hard drive is to download information to it.  It was Ms. Hamilton assertion that she suspected that Mr. Stephens was going to disclose the information that caused the termination and subsequent lawsuit.

> **2. The Court should deny summary judgment to American Family on Mr. Stephens' claim that American Family retaliated against him by filing a lawsuit and continuing to pursue the lawsuit for the purpose of securing a release of Mr. Stephens' discrimination and retaliation claims.**

In *Burlington N. & Santa Fe R. Co. v. White*, the U.S. Supreme Court broadened the definition of "adverse employment action" in the Title VII retaliation context.  548 U.S. 53, 68 (2006).  *Burlington* held that a Title VII retaliation plaintiff need not allege or prove an ultimate adverse employment action, because "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."  *Id.*, at 67. *Burlington* ruled that Title VII's retaliation provision requires a plaintiff simply to allege and prove "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.*, at 2415 (citations and internal quotation marks omitted). And in *Robinson v. Shell Oil Co.*, the U.S. Supreme Court explicitly held that for purposes of Title VII's retaliation provision, "employee" encompasses former, as well as current, employees.  519 U.S. 337, 345-46 (1997).

In *Mlynczak v. Bodman*, the Seventh Circuit explained that a showing that an employer's lawsuit "was independently an abuse of process" could support a retaliation claim. 442 F.3d 1050, 1061 (7th Cir. 2006). The U.S. Supreme Court has held that a lawsuit filed by an employer against an employee can constitute an act of unlawful retaliation under another federal statute governing employment rights when the lawsuit is filed with a retaliatory motive and lacking a reasonable basis in fact or law. *See Bill Johnson's Rests, v. NLRB*, 461 U.S. 731, 744 (1983).

Mr. Stephens submits that, on July 2, 2019, he told Mr. Knollenberg that American Family fired him because of his complaints about Ms. Hamilton's race discrimination. (Dkt. 44-2 at ¶50.) Mr. Knollenberg admitted that Mr. Stephens told him that he was wrongfully terminated and had a lawyer. (Dkt. 36 (Knollenberg Dep.) at 39:10-40:2.) Ms. Carlson admitted to texting Mr. Stephens on July 3 and requesting the name of Mr. Stephens' attorney. (Dkt. 21 at ¶62.) Ms. Carlson was aware of Mr. Stephens' prior complaints against Ms. Hamilton. (*Id.*, at ¶23.) American Family first requested return of the drive via an email from Ms. Carlson on July 5. (Dkt. 21 at ¶64.) Mr. Stephens replied that he was unable to return the drive by Ms. Carlson's arbitrary deadline of July 8. (*Id.*, at ¶65.) Mr. Stephens was sued a short time later on July 10—even though Mr. Stephens had promised to return the drive when he got back from out of town. (Dkt. 15 at ¶9.)

Atty. Boyer-Ryan admitted that she relied on Ms. Hamilton's statements that Mr. Stephens downloaded the files for nefarious purposes (including to disseminate the files) in making her decision to file the lawsuit.  (Dkt. 44-2 at ¶59.)  American Family's lawsuit alleged breach of contract.  (*See* Dkt. 27-1.)  In Wisconsin, a demand for performance must be made before filing a breach of contract action.  *See* Wis. JI-Civil 3054 (Demand for Performance).  A demand for performance also requires "a reasonable time therefor."  *Peyer v. Jacobs*, 275 Wis. 364, 368 (1957) (quotation marks and emphasis omitted).  It was unreasonable for American Family to sue Mr. Stephens for anticipatory breach of contract when he explained that he was out of town, could not perform, and would follow up upon his return.

Threatening to file a charge of discrimination with the EEOC can be protected activity.  *See Aviles v. Cornell Forge Co.*, 183 F.3d 598, 603 (7th Cir. 1999).  Atty. Boyer-Ryan admitted that after American Family was "put on notice of a race discrimination claim, American Family started settlement discussions "to resolve both matters."  (Dkt. 44-2 at ¶61.)  American Family argues that it believes that Atty. Rice agreed to complete release.  That is not so.  Atty. Rice's email does not mention a release at all.  Nonetheless, Atty. Hilbo admitted that he authorized continuing the litigation—after American Family had already received the drive it sued for—to enforce a nonexistent release requiring Mr. Stephens to give up his discrimination and retaliation claims.  (Dkt. 44-2 at ¶68.) In *Knox v. Roper Pump Co.*, the Eleventh Circuit explained that "[o]ur case law

confirms that a plaintiff could establish a causal connection between the protected activity and termination when an employer responds to an employee's discrimination complaint by conditioning the employee's continued employment on a release of claims and then fires the employee for rejecting the release." 957 F.3d 1237, 1246 (11th Cir. 2020). American Family's conduct in pursuing litigation long after it confirmed that Mr. Stephens had erased the drive is likewise retaliatory under Title VII and Section 1981.

In *Thompson v. Beecham*, the Wisconsin Supreme Court adopted the definition of abuse of process found in the Restatement of Torts. 72 Wis. 2d 356, 362; *see also Brownsell v. Klawitter*, 102 Wis. 2d 108, 114 (same). The Restatement provides for the very claim brought by Mr. Stephens in this lawsuit: "[a] [] situation arises when the proceedings are initiated for the purpose of forcing a settlement that has no relation to the merits of the claim." RESTATEMENT (SECOND) OF TORTS § 676, cmt. c. (Am. Law Inst. 1977). Mr. Stephens' discrimination and retaliation claims were unrelated to American Family's breach of contract claim.

In *Schmit v. Klumpyan*, the plaintiffs and defendants held title to a parcel of land as tenants-in-common. 2003 WI App 107, ¶2, 264 Wis. 2d 414, 663 N.W.2d 331. The plaintiffs wanted to sell their share of the land. *Id.* The defendants did not. *Id.* The plaintiffs filed a lawsuit seeking a judicial partition of the land. *Id.* The defendants counterclaimed for abuse of process. *Id.* The Wisconsin Court of Appeals reversed a jury verdict for the defendants. *Id.*, at ¶1.

*Schmit* explained that "[a] key component of the second element is the requirement that the process be used to obtain a collateral advantage[.]" *Id.*, at ¶9. *Schmidt*, like *Thompson*, relied on the Restatement. *Id.* The Wisconsin Court of Appeals concluded that there was "no evidence that Schmidt used the partition action to extort or put pressure on Klumpyan to achieve a goal other than the sale of the property, a legitimate goal of a partition action." *Id.*, at ¶25. In this case, by contrast, American Family used the Dane County case the ulterior purpose of defeating Mr. Stephens race discrimination and retaliation claims or securing waiver or release of those claims.

In *Wisconsin Pub. Serv. Corp. v. Andrews*, the plaintiff was preparing to construct a new transmission line and requested permission to enter the defendant's property for surveying. 2009 WI App 30, ¶5, 316 Wis. 2d 734, 766 N.W.2d 232. The defendant refused and disputed the legal validity of the plaintiff's easements. *Id.* The plaintiff filed a lawsuit for a declaratory judgment. *Id.*, at ¶6. The defendant filed counterclaims, including that the plaintiff's declaratory judgment action was an abuse of process. *Id.*, at ¶19.

The Court of Appeals in *Andrews* affirmed summary judgment on the abuse of process claim because "[a] legitimate dispute existed" and "a declaratory judgment action was a proper means of resolving that dispute." *Id.*, at ¶21. American Family's motion to enforce a release that Mr. Stephens did not agree was not. As for the alleged damages consisting of fees and costs, American Family did nothing to pursue those damages. (Dkt. 44-2 at ¶67.) The continued litigation

was about the release and Atty. Hilbo admitted that he sought dismissal of the suit when American Family was "not certain the judge would just grant the Motion to Enforce the Settlement Agreement." (Dkt. 44-2 at ¶69.)

The summary judgment decision in *Hasan v. Foley & Lardner, LLP*, does not support dismissing Mr. Stephens' retaliatory lawsuit claim. Case No. 1:04-cv-05690 (N.D. Ill., Jul. 26, 2007). In *Hasan*, the plaintiff alleged that his former employer threatened to file a lawsuit against him. *Id.*, at 6. *Hasan* concluded that there was no materially adverse action because "it is difficult to see how threatening a lawsuit could be considered retaliation." *Id.*, at 18-19. In this case, American Family actually filed a lawsuit against Mr. Stephens and continued to litigate that lawsuit for nearly a year for the purpose of a securing a release of Mr. Stephens' discrimination and retaliation. It was only after being put on notice of Mr. Stephens' intent to pursue those claims that American Family demanded a release.

### 3. The Court should deny summary judgment to American Family on Mr. Stephens' claim for punitive damages.

Mr. Stephens may recover punitive damages if he can demonstrate that American Family "engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 533-46 (1999). *Kolstad* established a three-part framework to determine whether punitive damages are appropriate. *Id.* First, Mr. Stephens must establish that

Ms. Hamilton and/or Atty. Hilbo acted with malice or reckless indifference to his rights under federal law.   Second, Mr. Stephens must establish a basis for imputing liability to American Family.  Lastly, once liability to American Family is imputed, American Family may avoid liability for punitive damages by showing it engaged in "good faith efforts to implement an antidiscrimination policy."

American Family has not disputed that Ms. Hamilton or Atty. Boyer-Ryan or Atty. Hilbo are managerial agents.   As discussed below, there exist genuine issues of material fact regarding the other two issues.   Therefore, summary judgment on the issue of punitive damages is inappropriate.

The terms "malice" or "reckless indifference" refer to the employer's knowledge that it may be acting in violation of federal law." *Kolstad*, 527 U.S. at 535.  "A plaintiff may satisfy this element by demonstrating that the relevant individuals knew of or were familiar with the antidiscrimination laws but nonetheless ignored them or lied about their discriminatory activities." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857-58 (7th Cir. 2001).  American Family admits that it thoroughly trains its employees on the antidiscrimination laws. (Dkt. 21 at ¶95.)  In *Bruso*, evidence that the decision makers were familiar with Title VII's anti-discrimination principles and the defendant's anti-discrimination policy was deemed sufficient to allow a jury to determine that the defendant acted with reckless indifference to the plaintiff's federally protected rights.  *Bruso*, 239 F.3d at 859-60.  Attys. Boyer-Ryan and Hilbo are employment law experts.  (Dkt. 33 at 4-11; Dkt. 34 at 6-15.)

Courts have held that "[t]he employer need not be aware that it is engaging in discrimination.  Instead, it need only act 'in the face of a perceived risk that its actions will violate federal law.'"  *Kolstad*, at 536; *see also Lafate v. Chase Manhattan Bank*, 123 F. Supp.2d 773, 784 (D. Del. 2000) (since most employers are aware that discrimination on the basis of race or gender is prohibited by federal law, courts should presume such knowledge unless the employer affirmatively proves ignorance); *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 38) (§ 1983 case held that the extent of federal statutory and constitutional law preventing discrimination suggests that defendants had to know that such discrimination was illegal).  Seventh Circuit decisional law also holds that while a showing of egregious conduct may support an inference that the employer acted with the requisite state of mind, it is not an independent requirement of a punitive damage award.  *See Hertzberg v. SRAM Corporation*, 261 F.3d 651, 661 (7th Cir. 2001)

Mr. Stephens may also prove punitive damages by establishing that the principals of the corporation were responsible for or authorized the discriminatory action.  *Fine v. Ryan International Airlines*, 305 F.3d 746, 755 (7th Cir. 2002).  Ms. Hamilton was Vice President of Customer Experience.  (Dkt. 35 at 7:16-18.)  Atty. Boyer-Ryan is an Assistant General Counsel.  (Dkt. 33 at 5:5-11.)  Atty. Hilbo is an Associate General Counsel.  (Dkt. 34 at 7:1-3.).  In *Jeffries v. WalMart Stores, Inc.*, the Sixth Circuit determined a District Manager and a Regional Personnel Manager qualified as managerial agents of the principal. 15 Fed. Appx. 252, 265-

66 (6th Cir. 2001); *see also see Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564, 568 (7th Cir. 2001) (*citing Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 517 (9th Cir. 2000) (holding that managers who are sufficiently senior in the corporation can be considered a "proxy" for the corporation and punitive damages may be imposed without regard to the company's good faith efforts to avoid discrimination); *see also Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 536 n.19 (7th Cir. 1993) (applying same rule for liability purposes).

"A plaintiff may also establish that the defendant acted with reckless disregard for [the] federally protected rights by showing that the defendant's employees lied, either to the plaintiff or to the jury, in order to cover up the discriminatory action." *Bruso*, 239 F.3d at 858. Mr. Stephens submits that the reasons offered for his termination, the decision to file suit, and the decision to continue the lawsuit were lies.

American Family's claimed efforts to avoid discrimination were insufficient. An employer may avoid liability for punitive damages if it can show that it engaged in good faith efforts to implement an anti-discrimination policy. *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 482 (7th Cir. 2003). American Family relies on its antidiscrimination policy. The "policy" is nothing more than a self-promotional statement expressing American Family's belief that it does not engage in discrimination. It provides no instruction to employees who believe they have been subjected to discrimination. It provides only passing mention of race

discrimination and provides no examples of race discrimination.   Furthermore, this "policy" contains no anti-retaliation provision.

"Although implementation of a written or formal antidiscrimination policy is relevant to evaluating an employer's good faith efforts at Title VII compliance, it is not sufficient in and of itself to insulate an employer from a punitive damages award." *Bruso*, 239 F.3d at 858.  To hold otherwise would provide an incentive to employers to adopt formal policies to escape punitive damage liability but would provide no incentive to enforce those policies.  *Id.* at 858-59.  There is no evidence that American Family actually enforced its antidiscrimination policy.  *EEOC v. Management Hospitality of Racine, Inc.*, 623 F. Supp.2d 980, 986 (E.D. Wis. 2009). All American Family offers is an assertion of training.  That is insufficient.

### D. Conclusion

The Court should enter an order denying American Family's motion for summary judgment as to Mr. Stephens' retaliation and abuse of process claims. American Family asks this Court to make credibility determinations.   "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."   *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003).   "However implausible the [Plaintiff's] account might seem, it is not our place to decide who is telling the truth."  *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007). "[S]ummary judgment is appropriate when there is no room for a difference of oopinion concerning the facts or the reasonable inferences to be drawn from them."

*Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999); *see also Payne*, 337 F.3d at 770

("Where the parties present two vastly different stories—as they do here—it is

almost certain that there are genuine issues of material fact in dispute."). Viewing

the facts in the light most favorable to Mr. Stephens, there are sufficient facts for

a jury to find that he was subjected to retaliation and an abuse of process.

Mr. Stephens does not oppose dismissal of his hostile working environment

claim.

Date: March 8, 2022.                       Respectfully submitted,

                                           */s/ William F. Sulton*
                                           WILLIAM F. SULTON

                                           THE SULTON LAW FIRM LLC
                                           2745 N. Dr. M.L.K. Drive
                                           Suite 202
                                           Milwaukee, WI 53212
                                           414-477-0088 (direct)
                                           414-250-7676 (fax)
                                           william@sultonlaw.com

                                           *Attorneys for Plaintiff*